U.S. DISTRICT COURT
FILED AT WHEELING, WV

JUL - 3 2008

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KELVIN LORENZO MCDANIEL,

        Petitioner,

v.                              Civil Action No. 5:07CV133
                              (JUDGE STAMP)

JOE DRIVER, Warden,

        Respondent.

## REPORT AND RECOMMENDATION THAT
## PETITION UNDER 28 U.S.C § 2241 BE DENIED

On October 10, 2007, the *pro se* petitioner, Kelvin Lorenzo McDaniel, then an inmate at USP Hazelton, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 seeking immediate release, and placement on five years of supervised release.[1] By Order dated November 5, 2007, petitioner's application to proceed *in forma pauperis* was granted.[2] Determining that summary dismissal was not warranted, an Order to Show Cause was issued against the respondent on November 7, 2007.[3] On November 14, 2007, petitioner filed a Motion to Amend and Correct his original Petition for Habeas Corpus.[4] In response to the Order to Show Cause, the respondent filed a Motion to Dismiss, or, in the alternative, a Motion for Summary Judgment on December 6, 2007.[5] The Court sent petitioner a Roseboro Notice on

---

[1] Docket No. 1

[2] Docket No. 9

[3] Docket No. 11

[4] Docket No. 14

[5] Docket No. 21

December 7, 2007.[6] Petitioner filed a Motion for Summary Judgment or Default Judgment pursuant to Rule 7 of the Federal Rules of Civil Procedure on December 10, 2007,[7] and a Memorandum in Opposition to Respondent's Motion to Dismiss/Motion for Summary Judgment on December 14, 2007.[8]

On June 2, 2008, petitioner filed a Motion for Report and Recommendation on his Petition for Writ of Habeas Corpus.[9] On June 25, 2008 petitioner filed a Motion for an Evidentiary Hearing.[10] The Respondent, on June 25, 2008, filed a Motion to Permit Response to Petitioner's June 2, 2008 Motion for Report and Recommendation,[11] and a Response to Petitioner's Motion for Report and Recommendation.[12]

## II. FACTS

Petitioner was in primary state custody beginning November 21, 2006 after being arrested by local law enforcement officers on a variety of charges. (Doc. 21-3, p. 2). On December 19, 2006, petitioner was charged in the Eastern District of Virginia in a two-count indictment with Bank Fraud in violation of Title 18 U.S.C. § 1344 and Aggravated Identity Theft in violation of Title 18 U.S.C. §1028A. (Doc 21-5, p. 1). Petitioner was sentenced on June 4,

---

[6]Docket No. 22

[7]Docket No. 23

[8]Docket No. 25

[9]Docket No. 35

[10]Docket No. 36

[11]Docket No. 37

[12]Docket No. 38

2007 to a total of thirty months imprisonment–six months as to Count One and twenty-four months as to Count Two, to be served consecutively. (Doc. 21-5, p. 2). Petitioner was immediately returned to state custody and the federal judgment was filed as a detainer with state authorities. (Doc. 21-4, Pp. 1-2).

On July 18, 2007, petitioner was sentenced by the Circuit Court in Petersburg, Virginia to six months and ten days incarceration for Violation of Probation and Failure to Appear. (Doc. 21-6, Pp. 1-2). State authorities credited petitioner for time in custody since he had been incarcerated beginning November 21, 2006. (Doc. 21-7). This resulted in an expiration date of May 15, 2007. Id.

Petitioner was transferred to federal custody on July 18, 2007. (Doc. 21-4, Pp. 1-2). Petitioner's federal sentence commenced on the same date that his sentence was imposed, June 4, 2007. (Doc. 21-8) (Doc. 21-10). Accordingly, for the time petitioner spent in state custody from May 16, 2007 through June 3, 2007, he was credited 19 days toward his federal sentence. (Doc. 21-9).

Beginning September 5, 2007, petitioner was designated to United States Penitentiary, Bruceton Mills, West Virginia ("USP Hazelton"), a maximum security facility. (Doc. 21-12). Petitioner filed his instant petition on October 12, 2007. After which, petitioner filed his first administrative remedy request November 2, 2007. (Doc. 21-13). As of June 23, 2008, petitioner has filed thirteen administrative remedy requests, nine specifically relating to Community Confinement Center release. (Doc. 38-4).

Since the filing of petitioner's original application, petitioner has been reclassified, and on January 17, 2008, petitioner was transferred from USP Hazelton and designated to FCC

3

Petersburg-Medium in Virginia on February 13, 2008. (Doc. 38-3). Petitioner's projected release date is July 20, 2009. (Doc. 21-12, p. 3).

### III. ISSUES PRESENTED

**A.**  **The Petition**

The petitioner alleges that:

(1)  he has not received his prior custody credit as stated in his Judgement and Commitment Order;

(2)  he has been prevented from exhausting his administrative remedies;

(3)  he is erroneously classified as a high-security inmate, which prevents him from participating in rehabilitative programs so as to generate an earlier release date; and

(4)  Bureau of Prison regulations on community confinement are unlawful and adversely affect petitioner's sentence.

**B.**  **Motion to Dismiss/Motion for Summary Judgment**

The respondent argues that the petition should be dismissed, or, in the alternative a motion for summary judgment granted because the petitioner:

(1)  failed to exhaust his administrative remedies prior to initiating the instant suit;

(2)  is not entitled to double credit for time spent serving his state sentence;

(3)  has no protected liberty interest in participating in rehabilitative programs;

(4)  has been re-scored as a medium security inmate;

(5)  raises a Community Confinement complaint that is not ripe for adjudication; and

(6)  raises a Community Confinement complaint that this Court does not have

jurisdiction to hear.

## C. Petitioner's Reply

In his reply, the petitioner restates many of his original claims. Additionally, the petitioner contends that his petition should not be dismissed because even if he did not exhaust all of his administrative remedies, it would be more efficient to proceed with his § 2241. Finally, petitioner submits several exhibits tending to show that he was erroneously categorized as a high-security inmate.

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. ANALYSIS

### A. Exhaustion of Administrative Remedies

Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241. Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3rd Cir. 1981) (*per curiam*); United States of America v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (unpublished); United States v. Gabor, 905 F.2d 76, 78 n. 2 (5th Cir. 1990); Sanchez v. Miller, 792 F.2d 694, 699 (7th Cir. 1986) cert denied, 479 U.S. 1056 (1987).

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The petitioner herein did not initiate any formal administrative remedy process with respect to his sentence computation claim until after filing his petition under 28 U.S.C. § 2241. (Doc. 21-5). Accordingly, petitioner's motion could be dismissed without prejudice for failure to exhaust administrative remedies.

Nevertheless, petitioner claims that Pamela Garcia, Unit Counselor prevented him from exhausting his administrative remedies. (Doc. 1-1, p. 4). In petitioner's Memoradum of Opposition, petitioner elaborated that Ms. Garcia failed to provide him with appropriate administrative remedy forms. (Doc. 25-1, p. 2)

An "informal resolution may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." 28 C.F.R. § 542.13. The Institution Supplement of USP Hazelton provides that the Unit Manager designate an alternative person in the absence of the Unit Counselor to initiate informal resolution and distribute the forms necessary for formal

written resolution of inmate grievances. (Doc. 21-20, p. 2). Additionally, an inmate may go directly to another department to attempt informal resolution if the issue can best by addressed by that department, and then, if necessary, file a formal administrative remedy. (Doc. 21-18, p. 2).

Even assuming that petitioner was unable to obtain informal resolution through his Unit Counselor, petitioner had a variety of ways, both informally and formally, to pursue the administrative remedy process. Relief should, therefore, be denied.

## B. Federal Sentencing Credit

In general, a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Nevertheless, in some cases, a federal sentence may begin prior to the date the Attorney General gains physical custody of the defendant. Title 18 U.S.C. Section 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment." Therefore, when a federal court orders its sentence to run concurrently with a previously imposed state sentence, a *nunc pro tunc* designation can be made, whereby the Bureau of Prisons designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998)(a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence.")

However, the mere fact that state prisoner is in federal court pursuant to a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has begun to run. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody

8

commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.").

In the instant case, the federal court sentenced the petitioner on June 4, 2007, and ordered his federal sentence to commence June 4, 2007. The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, supra at 337. Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See U.S. v. Brown, 977 F.2d 574 (4th Cir, 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**). (emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

In petitioner's case, the Circuit Court in Petersburg, Virginia sentenced petitioner to a term

9

of incarceration of six months and ten days. (Doc. 21-6, Pp. 1-2). Because petitioner had been incarcerated by Virginia since November 21, 2006, Virginia state authorities credited petitioner for time in custody, with an expiration date of May 15, 2007. (Doc. 21-7). When petitioner was transferred to federal custody, petitioner was credited nineteen days toward his federal sentence for the time petitioner spent in state custody (May 16, 2007 through June 3, 2007). Because the petitioner cannot receive double credit, he is not entitled to any further credit against his federal sentence.

## C. Liberty Interest in Participating in Rehabilitative Programs

Petitioner claims that because he was improperly designated as a high-security inmate that his constitutional rights have been violated. Specifically, petitioner alleges that his classification prevented him from participating in rehabilitative programs, which could have generated credit for an earlier release.

First, when petitioner filed his Petition Under 28 U.S.C. § 2241, he had yet to begin the administrative process on the claim that he was improperly designated as a high-security inmate. After petitioner filed a Request for Administrative Remedy Informal Resolution Form, dated November 6, 2007, petitioner's claim of erroneous security calculation was investigated, and petitioner has since been designated as a medium-security inmate, and transferred to FCC Petersburg, Virginia. (Doc. 38-2, p. 1) (Doc. 38-3).

Second, the Supreme Court has noted that through 18 U.S.C. § 4081, Congress has given prison officials full discretion to control rehabilitation programs in the federal prison system, and that inmates have "no legitimate statutory or constitutional entitlement sufficient to invoke due process." Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Furthermore, protected liberty

interests for inmates are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Sandin v. Connor, 515 U.S. 472 (1995). Therefore, because petitioner has no protected liberty interest in participating in rehabilitative programs, his constitutional rights cannot be violated, even if his erroneous security classification prevented him from participating.

**D.  Community Confinement Center**

In Petitioner's Motion to Amend, petitioner moves to add an additional claim that the Bureau of Prisons regulations on community confinement are unlawful and demands "[i]mmediate release to a HALFWAY [sic] House (CCC), and enjoining the Bureau of Prisons from applying 28 C.F.R. § 570.20–570.21, That [sic] 10% rule, and to give prior custody credit that's do [sic]."

According to the Bureau of Prisons Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, final and specific release preparation plans, including decisions regarding CCC referrals are ordinarily established eleven to thirteen months before an inmate's projected release date.[13]

Therefore, because petitioner's Motion to Amend was dated November 11, 2007, and petitioner's projected release date is July 20, 2009, petitioner was complaining about a process which did not yet affect him. Accordingly, petitioner's claim was not sufficiently ripe for review by this court at the time of filing. See Texas v. United States, 523 U.S. 296 (1998); Retail Industry Leaders Assoc. v. Fielder, 475 F.3d 180 (4th Cir. 2007).

Furthermore, a district court shall direct a writ of habeas corpus "to the person having

---

[13]This policy can be reviewed on the Bureau of Prisons website, www.bop.gov.

custody of the person detained." 28 U.S.C. § 2243. Since February 13, 2008, when petitioner was designated to FCC Petersburg Medium in Virginia, petitioner has been outside of the jurisdiction of the United States District Court for the Northern District of West Virginia. (Doc. 38-3). See Smith v. Reilly, 2003 WL 22939259 (District of Columbia, December 11, 2003) ("it is well settled that the appropriate defendant in a habeas action is the custodian of the prisoner."); See also Braden v. 30th Judicial Circuit Ct. Of Ky., 410 U.S. 484, 495 (1973) (noting that a court has jurisdiction over a habeas corpus petition only if it has personal jurisdiction over the petitioner's custodian.)

As late as June 2, 2008, petitioner still complains of the Bureau of Prisons CCC review process as applied to him, now, by the review board in Petersburg. Since petitioner's projected release date is July 20, 2009, petitioner is now within the eleven to thirteen month period for CCC review. This Court does not have jurisdiction to review this claim now that it has ripened because FCC Petersburg is outside this court's jurisdiction.

## VI. OTHER MATTERS

A. Petitioner's Motion to Amend and Correct his original Petition for Habeas Corpus is **GRANTED**. (Doc. 14).

B. Petitioner's Motion for Report and Recommendation on his Petition for Writ of Habeas Corpus is **DENIED** as moot. (Doc. 35)

C. Petitioner's Motion for an Evidentiary Hearing is **DENIED** as moot. (Doc. 36).

## IV. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the original three claims in petitioner's § 2241 be **DENIED AND DISMISSED WITH PREJUDICE**, while the amended

CCC claim be **DENIED AND DISMISSED WITHOUT PREJUDICE**, giving petitioner the right to file this claim in the appropriate jurisdiction. Furthermore, the undersigned recommends that petitioner's Motion for Default Judgment (Doc. 23) be **DENIED**, and that Respondent's Motion to Dismiss, or , in the alternative, a Motion for Summary Judgment (Doc. 21) be **GRANTED**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: July 3, 2008

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE